Good morning. First argued case this morning is number 18-22-36 in Re Inn at St. John's. Mr. Ractoli. Good morning. May it please the court. There are two main issues in this case. The first is the board's failure to apply the 13th Dupont Factor or to even correctly apply its own strategic partners test. The second is its overemphasis on the generic and literal elements of the marks without giving due weight to the visual differences in the two marks. The primary issue and I believe the key to this case should be the failure to apply the 13th Dupont Factor or to correctly apply the strategic partners test. Can I ask you, we're not bound by in terms of but we could either decide strategic partners is right and then we could say if the board failed to follow it that is a reversible error or if we don't think it's necessarily right there's just a general APA obligation to address something that the relevant agency here in the board previously did and say here's why we are either repudiating it or distinguishing it and it certainly did the latter right? I think that's right your honor and I've searched for you know federal circuit doctrine on the 13th factor or that might apply here and there really isn't a whole lot so we are left with in terms of you know existing law on this subject what the board has decided is strategic partners in the case but you're certainly right that if the court wishes to you know write more on this subject you could although I think all you really have to do here is look at the fact that they said they would apply their own test strategic partners and then they failed to do it correctly I mean they didn't apply their own test rates because they compared the wrong models. So I understand has this court ever commented on the aversion of strategic partners the origin of it which is something called Morehouse? So there is a case law from this court about Morehouse although that's Morehouse only applies in inter partes proceedings so it doesn't technically apply here although it is related in that I do think if this had been a proceeding between St. John's and OTG and hypothetically if OTG had filed an opposition or cancellation that Morehouse applies in either. So there's a there's a wasn't there a federal circuit case called OM Bread or something like that? Yes, yes there is. Talked about Morehouse? Yes, there is. I have a citation for that in court. From what I remember reading in OM Bread the idea is what we're trying to figure out is whether the opposer in the trademark opposition and I guess here it would be the prior registrant for five stake whether they would be any further injured by the registration of this new mark compared to the earlier mark that you already have a registration on. So and so then the question is okay the inquiry has always been okay is there any colorable difference between what you had before I guess for five restaurant and now you have something called five steakhouse that you want a registration on? Right. But it seemed like the question was well what would there be any delta of injury to the other registration and here that's five stake? So I think you're close your honor although I think I would put it this way when I think about the Morehouse defense and how it might apply in this case it would actually be if OTG who owns the five stake registration the one that was cited against our updated application for five steakhouse if they had opposed our application St. John's would have a very strong Morehouse defense and I think would win on it because OTG could not claim any further injury because we already have five restaurant which is virtually identical to five steakhouse so St. John's would prevail because OTG would not be able to say they have any colorable injury to claim because we already have a registration for five steakhouse. Well that's the that's the inquiry that we have now and this is the and you know the board basically addressed that very inquiry here and and disagreed and found that you know what you're trying to do with this new application for a trademark is is different enough from your older registration that essentially it would cause a further injury to five stake. That's not quite what they said. That's not quite what they said but that's basically the thrust of the inquiry in the sense that they said okay you want to delete restaurant you want to say steakhouse five steakhouse and ooh we see we have this other registration on our register called five steak and so this is you've you've really migrated into a zone that's closer to five steak by moving away from five steakhouse five restaurant and moving to trying to move to five steakhouse. So here's where they made their legal error and it came right at the moment when you said ooh that's when they made their legal error because the comparison between five restaurant and five steakhouse should have happened in a vacuum. They they said five steakhouse moves closer to the OTG mark that's not the question the question is are five restaurant and five steakhouse substantially similar do they create the same commercial impression and the reason that's the test is we have rights in our existing registration under you know 1052d the board is not supposed to allow anything to register that is confusingly similar to what we already have. I think this test is designed to protect those rights in existing registrations particularly in contestable registrations like the five restaurant mark is here as is the OTG mark because you know they they came in that that is baked into the strategic partners test it's one of the elements in the TTAB when when five steak was registered do we know whether the examiner considered five restaurant it never it was never cited never came up it just never came up the word cited I guess was you know in patent land you cite a lot of things that you don't find to be a problem but you cite them anyway on the right face of the patent so when you say it wasn't cited I couldn't tell whether that meant it wasn't viewed as a ground as a problem or was not even recognized to exist. So the record that we have doesn't show any indication that the examiner looked at the five restaurant mark and and didn't consider it. And then when the five steak application was published for opposition did you seek to oppose the five steak mark? They did not they uh our client wasn't was unaware of it. Right so you didn't seek to oppose it nor did you seek to cancel it when you had the time to cancel it right? That's true and and the reason is simply they didn't know about it until it was already incontestable and so the crux of the problem here though are the inconsistent results uh from the the trademark office where uh in 2009 apparently there was no likelihood of confusion between five restaurant and five steakhouse and then now in 2016 all of a sudden there is a likelihood of confusion between five steakhouse and five steak. That does rest on the assumption that the trademark examining attorney was aware of five restaurant when it was examining and evaluating five steak. Uh although I'm not really sure that the the inquiry depends upon you know whether the examiner you know actually looked at it or not. I mean the fact is it proceeded toward registration and if it was likely to cause confusion with five restaurant it shouldn't have but it did. Well I think what you're arguing is that the agency is being arbitrary and capricious by allowing the five steak mark and now refusing to allow your five steakhouse mark but that's why I'm saying that requires the agency to consciously understand and believe that five steak when it had to decide whether to register it is not confusingly similar to five restaurant and if if they just never found five restaurant and were unaware of it then you can't necessarily say that the agency is acting arbitrarily and capriciously in its decision making process of judging the relative confusion among all these different marks that have the word five in it. Sure so it's true that I don't know what was in the head of the examiner in 2009 but I do know what the board did in 2016 when it looked at the facts here and it looked at the fact that the 2009 registration went through regardless whether the examiner saw it or not and didn't give that any weight when it issued its decision in this case which it should have done I mean if you look at the strategic partners test that it said it would apply this case checks all the boxes and it should have proceeded toward registration based on that 13th factor. That decision I do know you know we have a written opinion on it I know everything that went into that decision that I think is arbitrary because it disregards what happened in 2009 when the only meaningful difference here and it's it is just the swap of it one generic term for another is that restaurant turned into steakhouse. So the theory would would be that even if confusion is likely and I think it's hard to say that it's not on this history whatever reason whether a mistake was made in the examination or for some other reason on this history you ought to be entitled to take this next step. I think that's correct your honor yes because again they decided in 2009 or that the effect of the decision trademark office was wrong one time around and they're they're stuck and now they need to be doubly wrong. No I wouldn't put it that way on the key that I think to this particular issue is got is our existing rights in our registered mark which is incontestable which protect our mark from registration of anything confusingly similar to it and by deciding no likelihood of confusion in 2009 and then all of a sudden deciding there's a like there is a likelihood of confusion in 2016 when we just swapped the generic for another generic and added the fork and knife which makes the marks less similar certainly not more similar at least if there if there were error that and and the applicant relied on the error and proceeded one doesn't have to spend all one's time reading trademarks published for opposition and so it was missed but more likely than not it certainly looks like error on the part of the the office and it does seem as if the the public who is entitled to rely on it that's a dilemma but then of course the other side is how about the rest of the public who more likely than not is not going to be able to tell these establishments apart uh so I I I do think the two marks are not confusingly similar so I don't think there's going to be an issue with the public not being able to tell them two marks apart and and the trademark office again allowed in 2009 five states to go through there was no likelihood of confusion then so switching restaurant to steakhouse doesn't create a likelihood of confusion it's a generic component that should be given very very little weight in the analysis I mean you know even thinking about um the way the mark would be used and it's also highly visual which I think is very important it was also not given enough weight by the trademark office I mean the St. John's mark is is bold and and very brush uh brush stroked lettering that St. John's came up with on its own uh the generic is a much smaller font at the bottom whereas the OTG mark is in a what looks like a standard font it has color as a component of it there's no design or the vocalizable elements in in essence as g doesn't five steakhouse sound like five steak when you say it um which number one doesn't give enough weight to the visual number two continues to overemphasize the generics I mean if you just step back for a minute and think about it um I've never what we have here is we have two marks they both say five in the marks and they both replace the letter f with the number five in the word five and we have one that has that unusual spelling of five with five steak and then we have another one with that same unusual spelling with five steakhouse um and we've also said that it's not unusual in fact it's fairly common to have the words of a mark be the predominant parts to analyze in the confusion analysis over any kind of stylization or design and here whatever design component there is I think we can say it's on the less dominant side compared to the unusual spelling of the word five associated with steak or steakhouse so I I don't see why we can say that the trademark board lacks substantial evidence when it found that these two marks are highly similar and and so what's wrong in this particular instance for the trademark board to find that the unusual spelling of five associated with some version of the word steak is is the dominant portion of the overall marks right so there's first of all there's no general rule on that in terms of the you know the right and so we're in failure to apply the 13th factor because there was no likelihood of confusion in 2009 and they both used five the same five in 2009 that they do in 2016. One was for five restaurant. True. And the other one was for five steak. But if we're if we're talking about now gee couldn't they have decided that the problem is one says five and the other one also says five that was true in 2009 equally as it's true in 2016 and there was no likelihood of confusion then. I I guess I'm I thought there was case law that says even if we can find what are arguable mistakes in the register that doesn't mean that the trademark office is bound by those mistakes on the trademark register to continually make additional mistakes and that am I wrong about that? So the the trademark office is not as they like to remind folks often not bound by its prior decisions and in their own manual they say they're to be given no evidentiary value but they do I mean we we have plenty of decisions from the board cited in our briefing the allegiance staffing case random acts of kindness case the American sale trading association case where they do in fact look at how they decided prior cases and say you know what under the 13th factor it would be inconsistent or inequitable for us to decide differently than we'd have before and prejudicial to this applicant and they have decided cases on that basis and should have done that here. What's the relationship between what you said the the I guess it's the MTP and the and the cases that you are are they just contradictory or? So I do think there's some contradiction because the the the manual says prior decisions are without evidentiary value but there are decisions from the board where they do look at how they decided prior you know prior applications particularly prior applications by the same party and have said you know allegiance staffing case for example. They look at prior written decisions about those or just the mere fact of the registration? Mere fact of the registration so I mean if you look at the allegiance staffing case for example there the applicant had a registered mark a different party filed a whole bunch of other applications that went through and they got registrations and then the original applicant its mark lapsed by accident it forgot to renew it and then they reapplied and were refused on the basis of all those other ones that went through when their original registration was still valid and the board said well wait a minute if there was no likelihood of confusion when all of those other ones issued when you had your original registration we can't now say you're blocked by all those people who we let through while you had a registration and that would be you know that would and so they decided nope you actually do get to have your registration. So again they're looking at the history of that party's marks and other marks being cited against it and even when you know they go through all the other factors and even when they have said gee there might be a likelihood of confusion here they can and have and should have done here said we've got to look at the 13th DuPont factor and say well wait a minute there's something else going on here we need to let this one go through. Let's hear from the office in the savings and rebuttal challenge. Thank you. Ms. Walker. Good morning may it please the court. The patent and trademark office has a statutory mandate to refuse registration to a mark that so that so resembles a previously registered mark as to be likely to cause confusion. The PTO is required to give full effect to a previously registered mark in this case the five state mark and that's particularly true here where that registration is more than five years old. I think there's no question that confusion is likely but there is a very large question about the prior registration. What's your response to the things that we've been talking about? Yes your honor that I want to be clear first of all that under the strategic partners analysis that the board applied that the issue of substantial similarity is a question of fact. There is not a legal error here. There is not something that the board did that was legally wrong in applying strategic partners and so my answer to that question is that the board considered strategic partners and considered whether the previous whether appellants previously registered by restaurant mark was substantially similar to its new mark for five. I guess what I'm trying to understand about strategic partners is what is the substantive quality of the similarity that the trademark office and trademark board demands when it comes to a trademark applicant trying to piggyback on an earlier registration that it that it owns and so substantial similarity I mean to me that sounds kind of loose. I mean if someone were to ask me do I think five restaurant is confusingly similar with five they look confusingly similar to me. They look like they would come from the same source but what I'm guessing here is that the trademark board isn't thinking of its coined term substantial similarity in that particular way. I mean to me I would expect that if you're going to allow a trademark applicant to piggyback on some version that it got registered earlier it would have to be a standard more like no colorable distinction between the two marks for you to say that you should be able to get the new mark and so I'm trying to understand now what does the trademark office think when it comes to the strategic partners inquiry. Yes your honor and strategic partners itself applies a no meaningful difference test and that is also the test that's incorporated into the trademark found appeal board and the one that was applied here so the test is no meaningful difference. The office hasn't had much opportunity to apply that in other cases so we don't have much directly applying strategic partners on that point but we do have analogies both in the tacking context and in the Morehouse defense which you refer to earlier and in both of those cases the standard is closer than it would be in say for a likelihood of confusion context and so and I think that the om case that you referenced earlier is a good example where this court said that olympic kids was a different mark than olympic even though the relevant portion of the mark at issue was olympic so it is a tighter standard a more narrow standard likelihood of confusion and what the board found here is a factual matter is that where you have the second mark moving closer to the cited registration that is a meaningful difference that is something that the court the board has to consider when it is looking at whether or not the coexistence on the register of the five restaurant mark and the five steak mark is one that would tend to show that there's no likelihood of confusion because that ultimately is the relevant inquiry under strategic partners is there a factual evidence that suggests that there is actually no likelihood of confusion even though the other factors point to likelihood of confusion and it's the coexistence of more than five years that that points to that no likelihood of confusion and when you have a meaningful difference in the coexistence of the marks you no longer have the likelihood of confusion if the court has no further questions can i just ask at some fairly high level of generality um is there something that i guess the saint john's can do is there some mechanism to go back and say to the pto you've got these two marks you registered them both apparently the second one without being aware of the first there's a problem here notwithstanding incontestability um this state of affairs should not stand or is are we just stuck with this you know it's not the end of the world so they can't use this particular modification of their earlier mark but um i mean one of the things that they could have done here is they could have sought consent to register that would have been additional fact that we don't have here um sort of short of that i'm sorry to elaborate what that yeah so a consent to register from it wouldn't have been an additional fact so a consent to registration from the owner of the five-state mark is something that says that the owner recognizes that there is no likelihood of confusion here so that is an additional fact that the office will take into account when considering likelihood of confusion that's not saint john's could have gone and asked the owner of five-state will you consent to my doing this and and say the owner says no then then we don't have that additional evidence but that is evidence that has been accepted by the office in the past is additional evidence you mean evidence yes would be accepted if they had said sorry if the owner of the five-state mark had consented to registration and the consent would say something like we um and that would have gone into the record that would have been additional evidence that the office would have considered in the likelihood of confusion analysis but we don't have that's very interesting because as a question because the likelihood of confusion standard is designed to protect the public not the trademark owner well of course also the trademark owner but it's designed to protect the public so in fact if they wish to agree we're just talking about registration we're not talking about the right to use if they agree can each has nationwide exclusivity of a an identical mark of unrelated entities that this is something that the it's not that they don't have an authority to object to it's additional evidence so it's not dispositive just as as evidence in any of these cases what do you mean by if there's no evidence we were talking about but at my i was suggesting these are substantially identical marks in terms of the words yes your honor and the consent to registration that i was talking about is not something that the office would consider that so ultimately the office would consider that as part of the likelihood of confusion it wouldn't be found to accept it that's right your honor thank you you're sure yes your honor answer to that i think that's very strange right i mean if that's the rule if you if you applied for a mark here was five stake and the cited registration against it was five stake and then the two parties came to the trademark office and said oh don't worry about a trademark office we're just gonna we're gonna carve up everything on our own and go ahead and register the applied for a five stake mark there's no possible way the trademark office would go along with that would it i don't believe so your honor and typically no it wouldn't no okay well but i can't right but but typically in those typically in those cases you have further restrictions right the parties would agree to further restrictions so that you don't have the two identical marks for the identical goods or services they might even have corporate affiliations by then so that he benefits from the others good marketing and they compete with each other that's easier that's easier or but the to me well maybe that's harder to me the the real question is the the identical substantially identical marks nationwide exclusivity right to exclude right to enforce one of these days who knows they might somehow find some conflict well all right so is that the position of the office that it may or may not have made a mistake but now they can veto the reliance that apparently was placed on the mistake well i don't think that it was it's about a reliance on the mistake it's about a valid subsisting trademark registration that the office cannot in an ex parte context challenge because it is a valid trademark registration and you know to the extent that there was a concern about that registration as judge 10 pointed out the applicant had both the opportunity to oppose and the opportunity for five years to cancel that registration so there is a mechanism that the statute provides as a there was a mechanism there was a mechanism as far as you're aware there currently is no mechanism that's correct your honor anything else for anything else today thank you thank you miss walker so you have two minutes of rebuttal okay thank you i do want to stress so the error here was not in 2009 when they when the otg mark went through there is no likelihood of confusion between either of the saint john's marks and the otg mark the error was in 2016 when they should have done they said they were going to apply the strategic partners test and it's not just the case that they applied it and we don't like the outcome and so now we're appealing they said they would apply it but they ran they didn't actually apply it they ran the wrong test altogether they were supposed to do a substantial similarity comparison between the two saint john's marks they didn't do that they did a comparison between the applied form or is that is that different from what strategic partners articulates in terms of meaningful no meaningful difference right so it's if you read substantial i gather the government i mean the no meaningful difference language is in strategic partners and it's logically i don't know sensible on its face to say whether there's a meaningful difference might actually depend on what this intervening one this intervening mark looked like and and whether the new one is closer to the intervening one why would that not legitimately go into assessing the meaningfulness now of the difference between applied for and um prior mark right not the reference point so i do think that runs the risk of doing exactly what happened here which is they essentially repeated the first factor analysis just and just said we've already found these two to be similar we we say we're just going to pair that again in the 13th factor analysis and you're done but the whole point of it is is to look at and protect and think about and consider the rights that the party has who applied for the new mark in their existing registration particularly in contestable registration it's about those rights in a vacuum it's not about those rights as compared to whatever the market that's being cited against it now and i do so substantial substantially similar it's also found in strategic partners sometimes they say meaningfully different i do think the court has some leeway here if the court thinks the test ought to be something else to my mind whether the two marks create the same commercial impression makes an awful lot of sense and you said so yourself uh jen that if you look at the two st john's marks they look pretty much the same uh in the i think there's no doubt that they create the same commercial impressions switching from restaurant to steakhouse doesn't change the commercial impression you can look at the detroit athletic company case from this court from last year for the point that using a generic term has no impact very very little impact if any on what the commercial impression of the mark is it should matter whether it's by restaurant or steakhouse or tavern or bistro or eatery um it's any more questions thank you thank you both this is taken under submission